ESTHER M. NEWELL, Appellant, *v.* JAMES H. WARREN, Respondent.

To preserve the lien of a chattel mortgage through successive years, it is not necessary that a copy should be filed each year. The statute requires but two conditions: 1st. That it be filed. 2d. That a copy, with a statement exhibiting the interest of the mortgagee, be also filed, within thirty days next preceding the expiration of one year from the first filing. This having been done, no further filing is necessary to make the mortgage a continuing security.

(Argued September 29th; decided December 29th, 1870.)

APPEAL from an order of the General Term of the Supreme Court in the seventh district, granting a new trial upon exceptions there heard in the first instance.

The action was brought for the delivery of personal property, on which the plaintiff had a chattel mortgage, executed by William H. Cheney; the defendant, as sheriff of Monroe county, having seized it upon an execution against Cheney.

William H. Cheney, a resident of Rochester, on the 16th day of December, 1857, executed to the plaintiff a chattel mortgage, which was filed in Monroe county clerk's office February 23d, 1858, and was given to secure notes to the amount of $1,000, which Cheney had given to the plaintiff for borrowed money. The mortgaged property continued at the residence of Cheney, and included all his household furniture, and was in daily use by himself and family. The plaintiff was a sister of Cheney's wife, and from 1847 was a member of his family, except when absent as a nurse for his invalid son. At the same time with the giving of the mortgage to the plaintiff, Cheney also gave to Mrs. Forbes, another sister-in-law, a mortgage on the same property to secure money borrowed of her. Not long after the giving of these mortgages, Cheney, with the consent of the plaintiff, sold to Darius Perrin the horses, carriage, democrat wagon, harness and pony, included in the mortgage, for $800, and that sum was, with the plaintiff's consent, paid upon Mrs. Forbes' mortgage, leaving about $100 due upon it. The entire property in both mortgages amounted to $2,000 in value.

On the 17th February, 1859, a copy of the plaintiff's mortgage was filed in the same clerk's office, with a certificate signed by her, showing her interest. The same was again done January 30th, 1860. Again January 12th, 1861. A copy of the mortgage, with a copy of Mrs. Newell's statement of the preceding year, and a certificate thereon indorsed, signed by Cheney, in the following words:

" I hereby certify, that the same amount as mentioned or certified last year, dated January 11th, 1861, is now due.

"ROCHESTER, *January 8th,* 1862.

"W. H. CHENEY."

were filed in the same office, January 8th, 1862.

Similar papers were filed January 9th, 1863. On the 12th of January, 1863, the defendant, as sheriff, by virtue of an execution against Cheney, levied on the mortgaged property. The plaintiff replevied it and obtained a verdict at the cir-

cuit. The General Term granted a new trial on the ground, that the renewals of 1861 and 1862 were insufficient. The plaintiff appealed to the Court of Appeals with the usual stipulation. The case is reported in 44 Barbour, 258, under the title of *Newell* v. *Warner.*

*James L. Angle,* for the appellant.

*George F. Danforth,* for the respondent.

HUNT, C. The defendant assails the verdict on two grounds :

1. It is alleged that, as the conveyance of the property excepted those articles " exempt from levy and sale under execution," and as it was not specified what articles were thus claimed to be exempt, the conveyance transferred nothing. This clause is usually found in general assignments, and has not been understood to render them void. I do not, however, deem it a point in issue in the present case. The mortgage transferred, among other things, a piano. That could not be deemed " necessary household furniture," and would certainly pass under the mortgage. The objection embraced this article with the others, and therefore was not good.

2. It is insisted that there was a failure properly to renew the mortgage in 1861 and 1862, and that it then became absolutely void as against the defendant.

The mortgage was first filed on the 23d of February, 1858. It was re-filed on the 17th of February, 1859, and again on the 30th of January, 1860; and again on the 12th of January, 1861; and again on the 8th of January, 1862; and again on the 9th of January, 1863.

The property was seized by the defendant, as sheriff, on the 12th day of January, 1863.

The mortgage was properly filed soon after its execution. The first renewal was made within thirty days preceding the expiration of the year from its filing. The other re-filings were not made within such time, and the last two were made and signed by Cheney, the mortgagor, and not by the mortgagee or her agent.

If the mortgage is sustained, it must be upon one of two grounds : 1. That the statute makes no provision for a second renewal; that having been refiled within thirty days before the expiration of a year, the mortgage continues good; or, 2. That the thirty days applies to each renewal, and if renewed within thirty days of the expiration of a year from the last renewal, it is sufficient. Neither of these questions have ever been passed upon in the Court of Appeals.

On the first point. The statute enacts (4 R. S., 2d ed., 435), that every chattel mortgage which is not accompanied by an immediate delivery of the goods, shall be absolutely void as against certain creditors, unless the mortgage, or a copy thereof, shall be filed as directed in the succeeding section. This is an enactment, by implication, that when so filed the mortgage shall be valid. The second section specifies the place in which the mortgage shall be filed. The third section provides that the mortgage thus filed shall cease to be valid as against the same class of creditors, after the expiration of one year from the time of its being filed, *unless* within the thirty days preceding the expiration of that year, a true copy shall be again filed. This is a virtual enactment that when the refiling is made at the appointed time, the mortgage thereby becomes valid. The enactment that it shall not be good unless a certain condition is performed, is an enactment that it shall be good if that condition is performed. The statute is the same, in effect, as if it contained the words, " in which event it shall be valid," added to those I have already cited. It shall be valid. For how long a time shall it be valid? Forever, or until some statute of limitations shall run against it. A mortgage upon real estate is valid, as against subsequent mortgagees, from the time of its being placed upon record. That condition of the statute being performed, it is absolute, and may continue a valid security for a century. I perceive no difference between the perfection of the two classes of securities, nor the length of time for which their existence continues. The object of the two statutes is the same, the protection of subsequent pur-

chasers or incumbrancers. (*Meech* v. *Patchin*, 14 N. Y., 71.) The real estate mortgage has but one condition to its validity, to wit, it should be recorded. The chattel mortgage has two conditions, to wit, it must be filed, and within thirty days of the expiration of a year from its filing, it must be refiled. When thus refiled it becomes a completed security, and no further filing is necessary to make it a continuing security. The statute does not require any further filing. There is not the remotest allusion in the act to more than one refiling. This practice of successive filings has grown up, I suppose, from excessive caution on the part of mortgagees. Possibly a suggestion of the courts that it was wise or prudent that there should be such a provision, has aided in creating the practice. Its wisdom, however, is a subject for legislative action, not for judicial construction. While we admit the wisdom of the act of 1833, we may content ourselves with the extent to which the legislature thought it necessary to go. It is unnecessary that the judiciary should require more than the legislature did.

Prior to the passage of that act, a chattel mortgage might be good, although the possession of the property continued with the mortgagor. It was open to explanation, and if the explanation was satisfactory to the court and jury, the mortgage was valid, notwithstanding there was no change of possession of the mortgaged property. (*Barrow* v. *Paxton*, 5 J. R., 258; *Bissell* v. *Hopkins*, 3 Cow., 166, append.: *Hall* v. *Tuttle*, 8 Wend., 395, 391; *Smith & Hoe* v. *Acker*, 23 Wend., 653.)

A further condition has been imposed by the act of 1833, viz., that the mortgage should be filed, and at the end of the year should be refiled. Further successive refilings are quite beyond the demand of the statute.

In the principal cases in which this statute has been under discussion in the Court of Appeals, and the late Court of Errors, I do not perceive anything in hostility to the views I have here set forth. (*Meech* v. *Patchin*, *supra*; *Ely* v. *Canady*, 19 N. Y. R., 496; *Smith* v. *Acker*, *supra*.)

Upon the ground that the plaintiff's mortgage was valid upon its refiling at the end of the first year, and continued valid without further filing, I am for the reversal of the order of the General Term, and for judgment for the plaintiff upon the verdict.

For reversal, LOTT, CH. C., HUNT, EARL and LEONARD, CC

For affirmance, GRAY, C.

Order of the General Term reversed, with costs, and judgment ordered for the plaintiff upon the verdict, with costs.