# U. S. DISTRICT COURT.

WILLIS PICKERT agt. THE CANAL BOAT INDEPENDENCE, HER
TACKLE, &c., and E. REMINGTON & SONS.

*Mortgages on canal boats — where and how to be filed — Notice.*

The provisions of the act of 1833 (*Laws of* 1833, *chapter* 279), as to the
filing of chattel mortgages, so far as they apply to *canal boats*, are super-
seded and replaced by those of the act of 1864 (*Laws of* 1864, *page* 993).

The filing of a mortgage on a canal boat (or a true copy thereof) in the
office of the auditor of the canal department (as required by the act of
1864) gives it preference over all claims but existing claims, and, of
course, preference over the claims of subsequent purchasers and mort-
gagees. No other filing is necessary.

A person is not a purchaser in good faith where he purchases with notice
of the prior mortgage.

The question as to what is sufficient notice to put a party on inquiry as
to the existence of a valid mortgage *pointed out.*

*Southern District of New York, March,* 1878.

*Beebe, Wilcox & Hobbs,* for libellant.

*M. M. Budlong,* for claimants.

BLATCHFORD, J. — On the evidence I am of opinion that
there is a considerable sum of money still due to E. Reming-
ton & Sons on the mortgage, and that the notes given to
them in March, 1874, were not given in settlement or dis-
charge of the mortgage. *Prima facie,* the claimants are enti-
tled to retain possession of the canal boat under the mortgage.

The provisions of the act of April 28, 1864 (*Laws of New
York of* 1864, *p.* 993) in regard to filing in the office of the

auditor of the canal department a mortgage on a canal boat
and refiling in the same office a copy thereof with a statement
of interest within thirty days next preceding the expiration of
one year from the original filing of the original mortgage are
the same as the provisions in the act of April 29, 1833 (*Laws
of New York of* 1833, *p.* 402) in regard to filing in the office
of a register, a county clerk or a town clerk a mortgage on
goods and chattels and refiling in the same office a copy
thereof with a statement of interest within thirty days next
preceding the expiration of one year from the original filing
of the original mortgage. It was the law of this state under
the act of 1833 (*Newell* agt. *Warren*, 44 *N. Y.*, 244) that no
filing after the original filing of the mortgage and the first
filing of the copy, with the proper statement, was necessary
in order to make the mortgage a continuing security, and that
there need not be a subsequent refiling. The same rule must
apply to the canal boat statute. By the act of May 13, 1873
(*Laws of New York of* 1873, *p.* 767) the act of 1833 was so
amended as to require a copy of a mortgage on goods and
chattels, with a statement of interest, to be again filed within
thirty days next preceding the expiration of *each and every
term of one year* "after the filing of such mortgage." The
construction in *Newell* agt. *Warren* (made in 1870) was thus
recognized, but no similar amendment was made to the act of
1864. In the present case the act of 1864, as thus construed,
was complied with.

It is urged for the libellant that it was necessary, in addition
to filing the mortgage, to renew it by refiling in accordance
with the act of 1833, because, although the mortgaged prop-
erty was a canal boat, it was also goods and chattels, and the
mortgagor resided when the mortgage was executed in this
state, in the town of Mohawk, Herkimer county, I am not
referred to any decision of the courts of the state directly
upon the point; but the general practice, I understand, has
been to file mortgages on canal boats only in the office of the
auditor of the canal department. The act of 1864 was a sub-

stitute for the act of April 15, 1858 (*Laws of New York of 1858, p.* 396). The act of 1858 provided that any person having any lien or incumbrance on any canal boat by a chattel mortgage "duly filed" could file in the office of the auditor a statement of the date, circumstances, nature and amount of his claim, with an affidavit thereto; and that "all claims and liens by chattel mortgage, a statement of which shall be filed as herein provided, shall from the time of such filing have preference and priority over all other claims and liens in the same manner and to the like extent of claims and liens arising on chattel mortgages filed and entered in towns where the mortgagor resides, but shall not have any priority over existing liens and claims. The act of 1858 was based on the idea of a double filing. It was only where a chattel mortgage had been "duly filed," that is, filed under the act of 1833, that the statement and affidavit could be filed in the office of the auditor under the act of 1858, when both filings had taken ·place, then under the act of 1858 the lien by the mortgage was to have preference and priority over all other claims on the canal boat except existing claims, to the same extent that claims under mortgages on other property filed under the act of 1833 would have under that act, as to such other property, preference and priority. In other words, as to canal ·boats, there was made necessary, by the act of 1858, a double filing, and until it had taken place mortgages on canal boats could not acquire the standing which mortgages on other goods and chattels acquired by a compliance with the act of 1833 alone. Then came the act of 1864 superseding the act of 1858 and its provisions, and providing for a single filing in the case of canal boats, and that in the office of the auditor, on the same plan as to filing and refiling as that of the act of 1833 in regard to other goods and chattels. Still more, the act of 1864 went on to provide as follows : "All claims and liens by ·chattel mortgage which shall be filed as herein provided shall, from the time of such filing, have preference and priority over all other claims and liens, but shall not have any priority over

Pickert agt. Canal Boat Independence.

existing claims and liens." This enactment strikes out the words "in the same manner and to the like extent of claims and liens arising on chattel mortgages filed and entered in towns where the mortgagor resides," and manifests an intention in connection with the other provisions of the act to dissever the filing of mortgages on canal boats from the act of 1833 and leave them to depend wholly on the act of 1864. It is enacted that when they are filed as provided in the act of 1864 (which is a filing in the auditor's office alone, and not, as in the act of 1858, a filing of something in the auditor's office in conjunction with a previous filing of something else elsewhere) they shall, from the time of such filing in the auditor's office, have preference over all claims but existing claims, and of course preference over the claims of subsequent purchasers and mortgagees. If some other filing elsewhere is necessary, effect cannot be given to the enactment that the filing under the act of 1864 gives the preference and priority. This makes the provisions of the act of 1833 repugnant to those of the act of 1864 so far as canal boats are concerned, and makes it necessary to hold that the provisions of the act of 1833, so far as they apply to canal boats, are superseded and replaced by those of the act of 1864.

E. Remington & Sons complied, therefore, with all the provisions of law required to make their mortgage a valid continuing security as against the libellant, even if he was a purchaser in good faith. A person is not a purchaser in good faith, within the meaning of the statute in question, when he purchased with notice of the prior mortgage (*Hill* agt. *Beebe*, 13 *N. Y.*, 556). In the present case the libellant claims to have purchased the boat from his mother, who was the owner and mortgagor. He testifies that he asked her if there was any claims against the boat; that she said the parties of whom she bought the boat were owing her, and that she said nothing about having given a mortgage on the boat. The mortgage was given to E. Remington & Sons for the purchase-money of the boat when the libellant's mother bought it. The libel-

Pickert agt. Canal Boat Independence.

lant's father and mother testify to the same conversation between him and his mother. After such conversation the libellant went to the auditor's office at Albany and inquired if there was any claims against the canal boat. The person in charge took down a book, and, consulting it, replied that there had not been since 1874. The libellant left without inquiring further. All this was sufficient notice to the libellant. He was bound to inquire further. He had notice that the persons who sold the boat to his mother had had a mortgage on the boat, and that such mortgage had been filed in the auditor's office, and that his mother claimed that the mortgage had been paid. He was bound to seek out those parties whose names were on the book which, through the clerk, he was consulting, and ascertain from them whether they regarded the mortgage as paid. If he had done so, he would have learned that the mortgage was in fact not paid (*Jackson* agt. *Post*, 15 *Wend.*, 588). His conduct shows that he knew he was bound to inquire, and that he was advised there had been a mortgage filed; but he evidently relied on the view that the mortgage had run out because not refiled from year to year. He had notice enough to put him on inquiry, and he was bound to follow up his inquiry by going to E. Remington & Sons, who were stated in the record before him to be the mortgagees. This was notice to him of every thing to which such inquiry would have reasonably led (*Carr* agt. *Hilton*, 1 *Curtis C. C. R.*, 390).

The libel is dismissed with costs.