Donohue, J.
— This is a motion to continue an injunction pending the litigation. The facts, as they appear in the papers on which the motion is made, and most of which are not disputed by the defendants, are substantially as follows:
The plaintiff, in 1875, was the owner of about $1,800,000 *351 of the third mortgage bonds of the Pacific railroad of Missouri. The railroad had defaulted in the payment of interest on all its bonds of this class, and a suit to foreclose the mortgage was commenced November 11, 1875, by George E. ICetchum, in the United States circuit court for the eastern district of Missouri, and Garrison became a co-complainant on his own application. The Pacific Bailroad Company admitted the allegations in the bill of foreclosure, but Marie and others, the defendants in this action, who were stockholders of that company, claimed that the third mortgage bonds were illegal and void, and petitioned the court in which the foreclosure was pending, for leave to defend the suit on behalf of themselves and other stockholders. After filing their petition, the defendants here made an agreement with Garrison, by which, in the letter addressed to them May 29, 1876, he promised that, if he purchased the railroad under the foreclosure sale, he would convey it to a new corporation, to be organized by them, the stock of which should belong to the defendants here (who, to prevent confusion, will be referred to in this opinion as the “ Marie party ”), while the bonds of such corporation should be received by Garrison in payment of his third mortgage bonds of the Pacific railroad. The Marie party, in consideration of this promise, agreed to withdraw their opposition to the foreclosure of the mortgage and aid in validating Garrison’s bonds. They did thereafter, in open court, withdraw such ¿pposition, and, in consequénce of such withdrawal, a decree of foreclosure was entered in June, 1876.
The Marie party claim that after such decree was entered they and Garrison made a new oral agreement, the terms of which are disputed, by which the Marie party assert that Garrison agreed, absolutely and unqualifiedly, to purchase the road on the foreclosure sale, no matter how much he had to pay for it, and also to organize a new corporation in Missouri, to which he would convey the railroad, the stock of which corporation should consist of 80,000 shares, of which 36,000 shares were to be transferred to the Marie party, in consid *352 eration of their aid in securing a foreclosure of the road. The letter of March 29, 1876, was thereupon surrendered to Garrison, who, while he admits the making of some oral agreement, denies that it was such an agreement as the Marie party claim it was, and specifically denies that he hound himself absolutely to purchase the road. On September 6,1876, the road was sold at public auction, under the decree in the foreclosure suit, to one James Baker, who bid a higher price than Garrison. But by a subsequent arrangement between Baker and Garrison, the latter was substituted as purchaser, and he thereafter conveyed the property to a new corporation, and subsequently, by a purchase of the stock of such new corporation, the railroad became, and now. is, the property of still another corporation, the present Missouri railroad company.
On becoming such substituted purchaser, Garrison refused to comply with the terms of the alleged oral agreement set up by the Marie party, and thereupon the latter, immediately and before the sale was confirmed by the court, took measures to set it aside, and, claiming to act as a committee representing on their own account and that of other stockholders 36,000 shares of the stock of the old company, on September 6, 1876, passed th.e following resolution in reference to the foreclosure proceedings:
“Resolved, That we will resist the said decree of foreclosure and the sale made thereunder to the best of our ability; that we will appeal the suit in which the decree was made to the supreme court of the United States for the redress of our grievances ; that we will continue the prosecution of the suit commenced by us in the name of IST. A. Cowdrey against the Pacific railroad and others, for fraud on the stockholders, whicli suit is now pending in the circuit.of the United States for the eastern district of Missouri.”
They at once notified Garrison that they repudiated the sale, and took an appeal from the decree of foreclosure, representing to the court that they were acting for all the stockholders of the Pacific railroad, which appeal was carried to the *353 supreme court of the United States, and upon which it was claimed by the Marie party that the sale was irregular, that the third mortgage bonds had been fraudulently issued and were void, and that the decree of foreclosure and the sale under it should be set aside so that the validity of the mortgage could be determined. While this appeal was pending for the purpose of getting back the railroad, and which appeal was controlled and carried on by the Marie party, an action was commenced in April, 1878, in the superior court of New York city, by the same Marie party against Garrison, in which it was claimed that Garrison had failed to perform his part of the contract in refusing to deliver to them 30,000 shares of stock in the new corporation, although they had consented to the decree of foreclosure, and had done all in their power to validate the third mortgage bonds,.and that by such failure they had suffered damage to the amount of $3,600,000, with interest from October 24, 1876. While this suit in the superior court was pending, the appeal to the supreme court of the United States, so taken by the Marie party, was dismissed. The court suggested that if there was fraud in the creation of the third mortgage, and the issue of the bonds secured by it, a suit in equity could be brought to set aside the decree of foreclosure and the sale, and to test the validity of the mortgage.
The case is reported in 101 United States Reports, 289. Upon this the Marie party having become directors, Cutting having been elected president and Marie vice-president, and thus, by reason of their holding a majority of the stock of the Pacific railroad, having absolute and complete control of the management of that company, commenced a suit in the United States circuit court for the eastern district of Missouri against the new Missouri Pacific railroad, which had purchased the railroad, and against Garrison, to set aside the decree of foreclosure and sale, and to have the third mortgage bonds declared void. A demurrer to the hill in this suit was finally overruled by the supreme court of the United States, and it *354 was there held that if the irregularity in the decree and sale could be established and the fraudulent character of the third mortgage bonds proved, the decree could be set aside .and the railroad restored to the old company (see 111 U. S. Rep., 505). As I understand that suit, it is now at issue upon a plea of the Missouri Pacific company and an answer ■of Garrison.
While, therefore, the suit in the superior court is now on trial before the referee, in which the Marie party are demanding damages amounting to over $5,000,000 against Garrison, on the ground that they consented to a decree of foreclosure .and sale and aided in validating the third mortgage bends, and that he refuses to compensate them for so doing, the .same individuals, acting through the corporation of the old Pacific railroad, which is absolutely under their control as ■stockholders and offices, are demanding in Missouri that the decree of foreclosure and the sale of the railroad be set aside .and the bonds held by Garrison declared worthless.
The plaintiff Garrison, in this present suit, asks, as a matter •of equity, that the defendants, the Marie party, be restrained from prosecuting their action in the superior court until the .action in Missouri has been finally determined. He claims .that the defendants are causing him great expense and •embarrassment in subjecting him in two states to litigations .based upon conflicting and contradictory grounds, and that .inasmuch as immediately after the sale under the foreclosure .the defendants expressly repudiated the sale, and from that .time to the present have made persistent, vigorous and unremitting efforts to set aside the decree and sale, get the railroad back and obtain a decision that his bonds are worthless, .they should, at any rate, be required to prosecute to a final determination their suit based on a disaffirmance of the contract in the Missouri court, which has jurisdiction of the whole controversy, and in which suit only the title to the road can be determined before prosecuting him here in an .action which is based on an entirely inconsistent and different *355 right. There is but little dispute about the facts, so far as they are involved in the present motion.
The defendants, the Marie party, insist that in due course they will succeed in setting aside the decree of foreclosure and secure a judgment that Garrison’s bonds are worthless, and if, as they claim they expect to, they should also recover a judgment against Garrison in the superior court for over $5,000,000, they may inflict irreparable injury upon him. If they succeed in the Missouri suit they will recover the railroad for the corporation in which they hold a majority of the stock, and in effect become part owners of the very property, for the sale and loss of which they will already have been compensated by the judgment and satisfaction in the superior court; and in addition to this they will render the Garrison bonds of no value.
If these results are to follow, and the defendants insist they will, it does not appear how Garrison can escape a double loss, involving apparently his financial ruin. While the parties to the suit in the superior court, and to that in the Missouri court, are in reality the same, they are not the same on record or in name. In the Missouri suit the Marie party use the name of the Pacific railroad, and claim to act for the benefit of all the stockholders of that corporation, which, for all purposes except the maintenance of that action, is practically defunct, while in the superior court they sue in their individual names as a committee representing 36,000 shares of stock in that old company. A judgment, therefore, either against or for the plaintiffs in the superior court suit (the Marie party) could not be pleaded by Garrison as a defense in the Missouri suit, because such judgment would be in favor of individual stockholders with whom the plaintiff of record in the Missouri suit has no privity in a legal sense. There might in such case be equities arising between Garrison and the Marie party who are beneficiaries in the Missouri suit, but such equities could not be established in that suit.
It must be assumed, for the purposes of this motion, that *356 the Marie party may obtain judgment in their favor, not only in the superior court suit, but also in that in Missouri. They cannot insist, upon this motion, and they do not, that they may succeed in one suit and be defeated in the other. Their theory is that they will prevail in both. If they choose to put themselves in the attitude of prosecuting Garrison in separate conflicting actions in different states, it must be assumed that they have considered the result of such actions. To prevail in both suits would be to oppress Garrison with a double liability and loss arising out of the same transaction; he being powerless to plead any judgment obtained against him here as a bar in the Missouri suit, and whatever remedy he might have to avail himself of such a judgment would be of the most circuitous and unavailable character.
I had supposed it to be elementary law that if a person having the right to affirm or disaffirm a contract, chooses to do the latter, and brings an action or takes other steps based on such disaffirmance, he cannot aftewards be heard in a court of justice to assert the contrary. This rule has nothing to do with the election, of remedies, but is based upon the doctrine that when a person has made an election as to rights he should not afterwards be permitted to change his position and set up an inconsistent right. I must confess, therefore, that I do not understand how the Marie party can maintain the action in the superior court after they have adopted the resolution of September 6,1876, above quoted, and after they have opposed the confirmation of the sale under the foreclosure, and when, from that day to the present time they have been striving and at this moment are endeavoring by every means in their power to obtain a judgment in Missouri setting aside the decree of foreclosure and restoring the railroad to a company in which they hold the majority of the stock and declaring Garrison’s bonds to be worthless. This was apparently the view taken by Garrison’s counsel in the superior court suit, for they pleaded these matters in bar of the action. The learned referee in that action, however, as I understand the *357 matter, has taken a different view, and has held that the adoption of such resolution and the taking of various legal proceedings, including the suit now pending in Missouri, are not of themselves a bar to the action before him. However much I may differ from him on this point, it is not my province to review his decision, but for the purposes of this motion I must, and do assume his decision to be correct. I understand, however, that the referee concedes that if the Marie party should prevail in the Missouri suit, and obtain a judgment setting aside the decree there, they could not afterwards succeed in the suit before him; and I do not see how it can be doubted that such would be the result. In other words, it is clear that while Garrison could not plead a judgment obtained against him in the superior court suit as a bar to the further prosecution of the suit in Missouri, he could, under the peculiar circumstances of the case, plead a judgment obtained against him in the Missouri suit as a bar to the further prosecution of the action in the superior court, although the nominal parties of record are not the same. It is, therefore, of the very greatest importance to him that the action in the Missouri court should be prosecuted to a final termination before the trial of the action here. It is certainly nothing but common justice that he should have an opportunity to plead the judgment against him in Missouri, if one should be obtained, as a bar to the action here, especially as the existence of the two suits and their relation to each other depended upon the voluntary acts of the Marie party and are entirely under their control. It follows, therefore, that the position of the referee, that the mere pendency of the action in Missouri is not a bar to the action here, is the very reason why the proceedings in the action in the superior court should be stayed until the suit in Missouri has been disposed of, or that the Marie party should be compelled to elect — if, as the referee seems to think, they have not done it — which action they will prosecute to final judgment, and, having made such election, be forever restrained from prosecuting the other.
*358 The referee’s ruling does not affect the position taken by Garrison in the present action — that it is unjust and inequitable that he should be prosecuted in the superior court while another suit, which is the outcome of the defendant’s prompt action in disaffirming the sale, and which is under their control, is pending, and which should be disposed of before the superior court suit is determined. The plaintiff here does not ask that the Missouri suit be held a bar to the suit in the superior court, but that, as a matter of equity, fairness and good conscience, the trial of the superior court suit should be stayed until the end of the litigation in Missouri. The relief asked in no way involves a defense of the action in the superior court, but is sought in an independent action involving rights and equities which have not been passed upon nor considered by the referee.
The learned counsel for Garrison has submitted upon this motion a large quantity of evidence taken in the proceedings, had before the referee, and has raised a variety of questions which cannot properly be passed on by me. Whatever might be my opinion, it is not for me to decide whether the referee’s rulings have been contrary to law, or whether they are inconsistent with each other, nor whether the referee has shown bias. The question whether the Marie party, claiming to be trustees and acting as such in the defense of the original suit in Missouri, had the right to abandon that trust and make the agreement they claim they did with Garrison, is one also not directly before me. The other question — whether they, for themselves, as stockholders, and professing to represent most of the other stockholders in the company, had the right to make an agreement for their own benefit, such as they set up, and sacrifice the creditors of that company — is also not before me, no matter how questionable such a transaction may have been. Nor have 1 anything to do with the question, what will be their position if they do ultimately succeed in the superior court? Nor whether thé money which they would recover would be held by them as trustees for all the *359 stockholders and creditors of the old company, no matter how doubtful that question may be. The sole question before me is, whether the defendants in the present action — the Marie party — should, in equity and good conscience, be allowed to proceed with the action in the superior court before the suit now pending and ready for hearing in Missouri, and which they have instigated and set on foot, has been there disposed of.
After a careful consideration of the whole matter, I am of opinion that the injunction restraining the defendants in this action from proceeding in the superior court should be continued. This court has undoubtedly power to restrain parties from proceeding with actions in other courts of this state, whether they be such as under the former divisions would have been known as actions at law or suits in equity (Erie Railway Co. agt. Ramsey, 45 N. Y., 637).
It has frequently exercised this power when parties within its jurisdiction have inequitably and unjustly attempted to prosecute actions in this or other states (Dinsmore agt. Neresheimer, 32 Hun, 204; Conklin agt. Secor Sewing Machine Co., 55 How. Pr., 209 ; Vail agt. Knapp, 49 Barb., 302; Claflin agt. Hamlin, 62 How., 284; Reinach agt. Meyer, Id., 283).
The general rule applicable to cases of this character is clearly and concisely stated by" Daniels, J., in Dinsmore agt. Neresheimer, above cited, as follows: “ It is the province of a court of equity to prevent one party from taking an unconscionable advantage of another; and when that may be attempted, to interpose and restrain the success of the act by means of an injunction; and when that advantage is sought through the instrumentality of a legal action to restrain its prosecution, to subordinate the controversy to the control and determination of equitable principles.”
It seems to me that the rule thus laid down is decisive of the present motion. It is not fair or equitable that Garrison should be subjected to the great expense and trouble of two *360 suits, and to the possible risk of a double loss, as he might be if the suit in the superior court is prosecuted to judgment before the trial of the suit in Missouri. The two suits ai’e based upon utterly inconsistent and contradictory claims; and as, so far as I can judge from the papers before me, the Marie party elected in the first instance to rescind their alleged contract with Garrison, they should be required to go on with the suit grounded upon that election. They chose to prosecute Garrison in that suit, and to endeavor to get back the railroad. In the action in the superior court they seek to recover from him over $5,000,000, because he does not deliver to them 36,000 shares of stock in the new company, to which the same railroad was conveyed, and the value of which stock would depend entirely upon Garrison’s having and retaining this very railroad.
I cannot conceive of legal proceedings more inconsistent and contradictory than these, nor of a clearer case for the interposition of a court of equity to prevent injustice and wrong. It is not possible on the papers before me to determine what are the actual merits of the controversy between Garrison and the Marie party. But Garrison’s side of the story differs from that of his opponents. He claims, as the papers show, that the whole affair on the part of the Marie party was a speculation. That he (Garrison) with others similarly situated, was trying to get his money by a foreclosure, but the Marie party threatened to attack his bonds, which he had bought in the market, and with the issuance of which he claims he had nothing to do, unless he made terms xvith them. That the whole stock of the old company was about 10,000 shares, which was then of little value. That he agreed to do certain things, provided he should buy the road at the foreclosure sale ; but that he never agreed to buy it absolutely. That the Marie party had an arrangement with him for their own benefit, at the expense of the other stockholders and unsecured creditors, although they represented to the court that they were a committee acting for all the stockholders; *361 that they purchased a large portion of the 36,000 shares controlled by them after they had made their arrangement with Garrison; that he tried in good faith to buy the road at the foreclosure sale, and bid more by $500,000 than he had intended to, but that he was outbid. That this failure to buy at the sale released him from all legal and moral obligations to carry out his arrangements with the Marie party, and that his subsequent purchase of the road was a matter with which they had no concern, and was made on such terms that it was not possible for him to treat further with the Marie party.
The merits of this defense on Garrison’s part must, of course, be decided elsewhere, but, for the purposes of this motion, it cannot be assumed by me that Garrison’s defense is all false, and that the allegations of the plaintiffs in the original suits are all correct. It would seem from the position taken by the Marie party, they consider that Garrison has no rights which a court of justice should respect. They seek, first; to recover a judgment in the superior court against Garrison ¿f over $5,000,000 based upon an investment by them, as claimed by Garrison, to have been a comparatively insignificant sum. Second. In the Missouri suit to take the railroad away from Garrison and the company to which he sold it, and to have Garrison’s $1,800,000 of bonds declared worthless. Third. To leave Garrison to make his peace with the company to which he sold the road as best he can. It seems to me that if the nature of the controversy involved ought to have any influence whatever on the decision of this motion, the foregoing brief summary sufficiently indicates that Garrison at least should have a fair opportunity to sa.ve himself from the Avrong which two inconsistent claims might bring upon him, unless he can secure the relief sought in this action.
The objection is taken by the counsel for the defendants in this action that Garrison ought to make a motion in the superior court for a stay there. It seems to me that this objection has no force. The granting or denying such a motion rests absolutely in the discretion of the court to which *362 it is addressed, and if that court should happen to decline to exercise that discretion in Garrison’s favor he would be remediless. It would not seem that an order denying such motion would be appealable even. But the right to equitable relief in a proper case is just as absolute as a right to a money judgment in a good cause of action in an action at law. In my opinion, Garrison makes out such a case, and he has an absolute right to the relief which a court of equity only can give in an independent action. The cases in which it is held that an equitable defense to an action at law must be set up in that action and not made the subject of a separate suit do not apply. For, as already stated, the facts which he alleges as a cause of action in this suit have been decided by the referee not to be a bar in that suit. And assuming that decision to be correct, all he seeks here is to restrain the trial of that action until the action in Missouri is disposed of.
The power of a court of equity to restrain the trial of any action perpetually in a proper case cannot be disputed. But it is claimed that it cannot restrain such trial temporarily, until another action has been tried or the happening of some other event. But it has been expressly decided by the court of appeals that a court of equity can, and in a proper case should, exercise this very power, through the instrumentality of an independent suit (Third Ave. R. R. Co. agt. Mayor, &c., 54 N. Y., 159). In that case the court restrained the prosecution of certain actions until one of a class should have been tried, on the ground that the party ought not to be put to the expense and trouble of defending a great number of actions. And if that reason was a good one in that case, it certainly is in this. In Cushman agt. Leland (93 N. Y., 652) and Vail agt. Knapp (49 Barb., 299) similar relief was given.
I do not see how the superior court could give Garrison the relief to which he is entitled upon a mere motion in the suit now pending there for a stay of proceedings. Even under the present practice a defendant cannot obtain an injunction *363 except in aid of a counter-claim set up in his answer. Of course Garrison might have commenced this present action in the superior court, and in that action have sought the relief which he. is seeking here. But he could not by a mere motion for a stay of proceedings in the suit now pending in that court invoke the aid of the equitable powers which that court possesses. How the facts which are set up as a cause of action in the present suit did not appear in the complaint in the action in the superior court suit. They were pleaded in the answer as a bar, and on an application for a stay before the trial the court might have denied it upon the ground that when proved they would constitute a complete defense to the action, although the referee has since held that they are not a bar. Besides, on a motion for a stay, the court would not undertake upon ex parte affidavits to determine whether the facts now set up here as a cause of action were or were not true. It is only since these facts have been brought out and established on the trial before the referee, and the referee has held that they are not an absolute bar, that Garrison is in a position to avail himself of those facts in asking that the trial in the superior court be delayed until the Missouri suit has been disposed of, and it seems to me that the only way in which he can so avail himself of these facts is by doing just what has been done, namely, setting them up as a cause of action in an independent suit asking a temporary injunction, and that if he proves them on the trial he should have a judgment, as a matter of right, staying the trial of the action in the superior court until the final disposition of the suit in Missouri.
Motion granted.