Vail *v.* Knapp.

---

D. Thomas Vail and Daniel Robinson *vs.* Shepard Knapp and George Briggs, trustees, &c.

John L. Thompson and others *vs.* The same.

Jonas C. Heartt and others *vs.* The same.

The latter clause of the provision of the Internal Revenue Act of the United States authorizing the collector to allow stamps to be affixed to mortgages, when they have been omitted without intent to evade the provisions of that act, or to defraud the government, but declaring that "no right acquired in good faith before the stamping of such instrument * * * and *the recording thereof*, if such record be required by law, shall in any manner be affected by such stamping," &c. does not apply to *chattel mortgages*, inasmuch as it contemplates mortgages which require to be *recorded*.

Vail *v.* Knapp.

Chattel mortgages are merely filed, and an entry made in a book kept by the clerk, of the names of the parties, the amount secured, the date, time of filing, and when due. This cannot be regarded, in any proper sense, as *recording* a mortgage.

The statute is highly penal, and should not, even in a doubtful case, receive a construction which would invalidate the security.

Under the provision of schedule "B," of the revenue act, specifying among the instruments which require to be stamped, "mortgage of lands, estate or property, real or *personal*, heritable or moveable, whatsoever, where the same shall be made as a security for the payment of any definite and certain sum of money lent at the time, or previously due and owing, or forborne to be paid, being payable," no stamp is necessary upon mortgages executed to secure the mortgagees as drawers and indorsers of drafts drawn for the benefit of the mortgagors, and payable *subsequent to the execution of such mortgages;* where no money was lent at the time, nor had any become due and owing, nor was any forborne to be paid, *being payable.*

While, as a general rule, the courts of this state decline to interfere by injunction, to restrain its citizens from proceeding in an action which has been commenced in the court of a sister state, there are exceptions to this rule; and when a case is presented, fairly constituting such exception, extreme delicacy should not deter the court from controlling the conduct of a party within its jurisdiction, to prevent oppression or fraud. No rule of comity or policy forbids it,

Thus, where property subject to chattel mortgages held by the plaintiffs, was attached in the state of Vermont, in an action brought there, in the name of the defendants, against the mortgagors, residents of this state; which property they were about to sell; and it appeared that the property, at the time it was attached, was actually and necessarily used by the mortgagors (a railroad company) in conducting their ordinary business, and that the seizure thereof had seriously embarrassed them in transacting their business, thereby materially diminishing their ability to pay the mortgage debts; that the parties to the record in the action in Vermont were citizens of this state; that the plaintiffs were not parties to such action, and could not properly be heard therein; that the plaintiffs' mortgages, being unaccompanied by actual possession, were not, as against creditors, recognized as valid by the courts of Vermont, but were valid in New York; that the defendants had voluntarily consented to the use of their names as parties to the action pending in Vermont, and had received indemnity from another person; and that such action and proceedings were prompted by hostility to, and a desire to injure, the mortgagors, which, if successful, would impair, if not wholly destroy, the plaintiff's securities; *Held,* that the case was *special,* within the decisions of the courts of New York; and as such, justified the continuance of an injunction restraining the defendants from selling the mortgaged property, until the final termination of the action brought by them, in Vermont.

Vail *v.* Knapp.

MOTION to continue an injunction. On the 10th day of January, 1857, the defendants, as trustees of the Western Vermont Railroad Company, a corporation then in existence, leased its road, situated in the state of Vermont, to the Troy and Boston Railroad Company, to be used and possessed by them for the term of ten years from the said tenth day of January, 1857 ; and the lease contained a covenant, by which the lessees agreed to surrender the said road, at the expiration of said term, in as good condition as they received the same, natural wear excepted. Before the expiration of said lease, the Bennington and Rutland Railroad Company were organized under the laws of the state of Vermont, and took the place of the Western Vermont Railroad Company, and at the expiration of the said lease took possession of said road, and still hold the same.

An action has been commenced, and is now pending in the county court of Bennington county, Vermont, in the name of said Shepard Knapp and George Briggs, as such trustees, against the Troy and Boston Railroad Company, to recover damages for injuries to said road while possessed by the last mentioned company under said lease.

The plaintiffs, in the above entitled actions, and the defendants, Knapp and Briggs, reside in the state of New York, and the Troy and Boston Railroad is also situated in said state of New York. Certain personal property of the last named company, consisting of locomotives and cars to the estimated value of $125,000, have been attached in the state of Vermont, and are there held to satisfy any amount which may be recovered against the Troy and Boston Railroad Company in the action so as aforesaid commenced against said company in the name of said Knapp and Briggs, as such trustees.

Proceedings have been commenced, under the laws of Vermont, to sell the said attached property, on the ground that it is liable to perish, waste, or to be greatly reduced in value by keeping, or cannot be kept without great or disproportionate expense, which proceeding is entertained by the per-

son who executed said attachment on the application of the plaintiffs' in said action in Vermont, and not by virtue of any order of the court in which said action is pending ; and it does not appear that such court has any immediate control thereof. The property thus attached was, at the time it was served, actually and necessarily used by the Troy and Boston Railroad Company in conducting its ordinary business. The said property was, at the time, subject to sundry chattel mortgages, which were executed by said last named company to the plaintiffs in the above entited actions, to secure liabilities incurred for said company to enable it to proceed with its legitimate business. The said mortgages were executed in good faith, and based upon a valuable and adequate consideration, and properly filed in the clerk's office of the county of Rensselaer, but no United States revenue stamps were affixed thereto at the time of the execution thereof, nor previous to the seizing of said mortgaged property by virtue of said attachments, such stamps having been omitted in consequence of an impression that none were required because the drafts specified in said mortgages, and to secure which such mortgages were executed, were properly stamped. The mortgaged property remained in the possession of the Troy and Boston Railroad Company up to its seizure by virtue of such attachment. Subsequent to the seizure of said property the mortgagees were informed that such stamps were required, and applied to the collector of revenue for the United States in the city of Troy, and caused to be affixed to such mortgage the stamps prescribed by the United States revenue law.

Mr. Trenor W. Park, of Bennington, is the president and principal manager of the Bennington and Rutland Railroad Company.

The plaintiffs, as such mortgagees, ask the continuance of the injunction heretofore granted against the defendants, Knapp and Briggs, to prevent the sale of said mortgaged property until the final disposition of the said action against the Troy and Boston Railroad Company.

Vail *v.* Knapp.

*W. A. Beach, Geo. Gould* and *D. L. Seymour,* for the plaintiffs.

*Mr. Phelps* and *J. H. Reynolds,* for the defendants.

INGALLS, J.    The foregoing are the leading facts presented upon this motion.    Many of the details are omitted as not necessary to show the grounds upon which this decision is founded.

The first question which I consider is in regard to the validity of the chattel mortgages, which are attacked upon the sole ground that, in consequence of the omission to attach revenue stamps, they were and are void ; so far, at least, as the attaching creditor is concerned, the seizure having been made by virtue of such attachment previous to the affixing of such stamps by the collector.

I am of opinion that if any stamps were required such mortgages were properly stamped by said collector, and thereby rendered valid and operative in this state against the attaching creditor.    It is very clear that such stamps were not omitted with intent to evade the provisions of the revenue law, or to defraud the United States Government, but for the reason before stated.    By section 204, of the revenue law of the United States, as contained in a pamphlet prepared under the direction of the commissioner of internal revenue, the collector was clearly authorized to allow the stamps to be affixed to such mortgages, if any were required, and whenever affixed, the said instruments could be used in the same manner, and with like effect, as if they had been originally stamped, unless the following provision of said section excludes them : " But no right acquired in good faith before the stamping of such instrument or copy thereof, *and the recording thereof,* as herein provided, if such record be required by law, shall in any manner be affected by such stamping as aforesaid."    Chattel mortgages are not, in my judgment, included within such provision, as it contemplates

mortgages which require to be recorded. Chattel mortgages are merely filed, and an entry made in a book kept by the clerk of the names of the parties, the amount secured, the date, time of filing, and when due. This cannot be regarded, in any proper sense, recording a mortgage. The statute is penal, and should not, even in a doubtful case, receive a construction which would invalidate the security. The cases cited by the counsel for the defendants, (*Meech* v. *Patchin*, 14 *N. Y. Rep.* 71 ; *Gregory* v. *Thomas*, 20 *Wend.* 19,) do not sustain the position assumed by the defendants ; they merely decide that the effect of filing a chattel mortgage is the same as recording a real estate mortgage, in one particular, viz. to give notice. They do not decide that the terms filing and recording are synonymous, nor are they so understood. Again schedule " B," of the revenue law, found on page 105 of said pamphlet, prescribes the instruments which require to be stamped, and provides in regard to mortgages as follows : " Mortgage of lands, estate or property, real or *personal*, heritable or movable, whatsoever, where the same shall be made as a security for the payment of *any definite and certain sum of money lent at the time, or previously due and owing or forborne to be paid, being payable.*" The mortgages in question were executed to secure the mortgagees as drawers and indorsers of certain drafts, which were drawn for the benefit of the Troy and Boston Railroad Company, and payable *subsequent to the execution of such mortgages.* No money was lent at the time, nor had any become due and owing, nor was any forborne to be paid, *being payable.* I am, therefore, inclined to the opinion that the mortgages require no stamps whatever. The drafts mentioned in said mortgages were properly stamped.

It is further insisted by the counsel for the defendants, that the injunction should not be continued, because it in effect restrains proceedings in an action pending in a court in the state of Vermont.

The courts of this state, from motives of comity and public

policy, have very properly refused, *except in special cases*, to restrain, by injunction, parties residing within its jurisdiction from proceeding in actions commenced in courts of a sister state. (*Mead* v. *Merritt*, 2 *Paige*, 402. *Schuyler* v. *Pelissier*, 3 *Edw. Ch.* 191. *Williams* v. *Ayrault*, 31 *Barb.* 364.) This rule is held very differently in England, and a review of the decisions is contained in *Hoffman's Provisional Remedies*, 302. But is unnecessary to pursue the inquiry as to what the law or custom is elsewhere, as we must be governed by the law as established in the state of New York. In *Willard's Equity Jurisprudence*, the learned author remarks, at page 348 : " The court will not, *unless perhaps, in some very special case*, exercise the power by injunction, restraining proceedings which have been commenced in another state."

In *Burgess* v. *Smith*, (2 *Barb. Ch.* 276,) the Chancellor remarks : " Again, if the court has the power it must be *a very special case*, which will induce it to break over the rule of comity, and of policy, which forbids the granting of an injunction to stay the proceedings in a suit which has already been commenced in a court of competent jurisdiction in a sister state." While as a general rule, the propriety of which is apparent, the courts of this state decline to interfere by injunction, to restrain its citizens from proceeding in an action which has been commenced in the court of a sister state, yet there are exceptions to this rule, and when a case is presented, fairly constituting such exception, extreme delicacy should not deter the court from controlling the conduct of a party within its jurisdiction to prevent oppression or fraud. No rule of comity or policy forbids it. It remains to be determined whether the facts presented upon this motion constitute an exception to such general rule. It is not denied that the plaintiffs are *bona fide* creditors of the Troy and Boston Railroad Company, having pledged their credit, and advanced their money to aid.

the said company when embarrassed, thereby enabling it to proceed with its ordinary business, and also promoting a useful public enterprise.

The mortgages constitute the plaintiffs' security, and as there was no actual change of possession of the mortgaged property previous to the seizure thereof by said attachment, the plaintiffs would not be allowed by the law of Vermont, (as I understand it,) to assert their mortgages successfully against the attaching creditor, and consequently any effort to obtain protection in the courts of that state would be fruitless, and hence adequate relief could not be there obtained. It is in substance alleged by the plaintiffs under oath, and not denied by the defendants, that Mr. Park, who is the president and main manager of the Bennington and Rutland Railroad Company, and who is actively engaged in conducting the proceedings in Vermont, in the name of the defendants, against the Troy and Boston Railroad Company, is actuated by feelings of hostility to said company, and has declared that he would do all in his power to embarrass and injure said company, and ruin it if possible. It is further stated that upon a demand being made upon the defendants to surrender the property attached, they stated that they did not believe there was any justice in the prosecution against the company, or any validity in the claim upon which the attachment was issued, but that they had given Mr. Park permission to use their names in the proceedings, and he had agreed to indemnify them. It is true the defendants deny a portion of the statement, but do not deny that they consented *to a use of their names, and that they were indemnified.*

It is also alleged that said seizure of the property has seriously embarrassed the Troy and Boston Railroad Company in transacting its business, thereby materially decreasing its ability to pay the debt secured by such mortgages, and from the nature of said property being adapted to only one use, a hasty sale thereof would inevitably result in a great sacrifice. The said company is otherwise heavily in-

Vail *v.* Knapp.

debted, and the large amount which would be required to replace the said property, if sacrificed by such sale, would render payment of the mortgage debt almost, if not wholly hopeless.

It is quite evident that the mortgages are the main, if not the entire reliance of the plaintiffs, and if the property thus mortgaged is sacrificed, they must unavoidably sustain the loss. Although the proceeding by attachment in Vermont is in form, in the action prosecuted against the Troy and Boston Railroad Company to recover damages for such alleged violations of the covenant contained in the said lease, yet the proceedings to sell such property appear, by the law of Vermont, to be under the control of, and conducted by the person who executed the attachment, and he need not necessarily be a regular officer ; and I do not understand that the court in which the action is pending, gives any direction, or exercises any immediate control, over such proceeding.

· The plaintiffs do not seek, by injunction, to interfere with the action, or the court in which it is pending, but merely to restrain the defendants, who are citizens of the state of New York, from allowing in their names and through their agency, a sale of said property during the pendency of said action, in a proceeding to which the plaintiffs herein are not parties, and in which they cannot be heard.

It is true the defendants deny that they have participated in or have any control over such action or proceedings, and insist that by the law of Vermont they have no power to prevent the use of their names, and cite the case, *The Farmers and Mechanics' Bank* v. *Humphrey*, (36 *Vermont Rep.* 554,) in support of such position. I am not, however, satisfied from the facts detailed, that the defendants are *in fact* so situated as to be unable to prevent the sale of said property, but, on the contrary, am inclined to think that their relation to Mr. Park and the Bennington and Rutland Railroad Company is such that they can prevent such sale if they are disposed so to do. The defendants have consented to the use

of their names in this action and proceeding against the Troy and Boston Railroad Company, under an agreement by which they are indemnified by Mr. Park, but the nature and extent of that indemnity is not stated by the defendants, and we may reasonably assume that it is commensurate with any loss or damage to which the defendants may be subjected on account of such proceedings, so that in no event are they likely to be prejudiced. It is further insisted by the defendants that the plaintiffs should seek protection from the courts of Vermont, where adequate relief can be granted them. It is by no means certain that the courts of Vermont, under the law which there prevails in regard to chattel mortgages, could protect the plaintiffs.

Again : the plaintiffs are not parties to the action or attachment proceedings, and therefore cannot be heard therein. It therefore seems improbable that the plaintiffs could secure adequate relief, not on account of any reluctance on the part of the courts in Vermont to accord to a citizen of this state the same rights and protection which would be extended to its own citizens, but on account of the embarrassment arising from a conflict in the laws of the said states in regard to the legal effect to be given to the securities under which the plaintiffs claim. In granting the injunction we deal with parties residing in this state, and do not seek to interfere with or attempt to control the action of the court in Vermont, in which the action is pending. We command our own citizens, not the court or parties residing in Vermont.

This distinction has long been recognized. In *Story's Equity Jurisprudence*, (*vol.* 2, § 899,) the learned commentator remarks ; "But although the courts of one country have no authority to stay proceedings in the courts of another, *they have an undoubted authority to control all persons and things within their* own territorial limits. When, therefore, both parties to a suit in a foreign country are resident within the territorial limits of another country, the courts of equity in the latter may act *in personam* upon those parties, and

Vail *v.* Knapp,

direct them, by injunction, to proceed no further in such suit. In such a case these courts act upon acknowledged principles of public law in regard to jdrisdiction. They do not pretend to direct or control the foreign court, but without regard to the situation of the subject matter of the dispute, they consider the equities between the parties and decree *in personam,* according to those equities, and enforce obedience to their decrees by process *in personam."* In *Dehon* v. *Foster,* (4 *Allen,* 550,) Bigelow, Ch. J. remarks: " The authority of this court as a court of chancery, upon a proper case being made, to restrain *persons* within its jurisdiction from prosecuting suits either in the courts of this state, or of *other states,* or foreign countries, is clear and indisputable. In the execution of this power courts of equity proceed, *not upon any claim of right to interfere with or control the course of proceedings in other tribunals, or to prevent them from adjudicating on the rights of parties when drawn in controversy,* and duly presented for their determination. But the jurisdiction is founded on the clear authority *vested in courts of equity over persons within the limits of their jurisdiction, and amenable to process,* to restrain them from doing acts which will work an injury to others, and are, therefore, contrary to equity and good conscience. As the decree of the court in such cases is *pointed solely at the party, and does not extend to the tribunal where the suit or proceeding is pending,* it is wholly immaterial that the party is prosecuting his action in the courts of a foreign state or country." (*See also Hilliard on Injunctions,* p. 235 ; *Dobson* v. *Pearce,* 12 *N. Y. Rep.* 169 ; *Field* v. *Holbrook,* 3 *Abbott,* 377.)

It is evident that the action now pending in the court in Vermont cannot determine the rights of the plaintiffs in this action, for the obvious reason that they are not parties to the action in Vermont, and as to them no action is pending in that state ; but there is a proceeding between other parties who are residents of this state, by which the rights of the

plaintiffs herein are endangered.    If it is in the power of the
defendants to prevent a sale of the property, every considera-
tion of justice and propriety indicate that they should exer-
cise their influence and authority in that direction.    Certainly
no material injury will be likely to result to the parties in-
terested in the action pending in Vermont.    The property
cannot be removed from the state, nor can it reasonably be
regarded so far perishable, or liable to deterioration, or sub-
ject to such expense for its protection and preservation, as
demands a sale thereof before the determination of the action
to protect the rights of the attaching creditor.

Judging from the facts submitted upon this motion, an
immediate sale would affect the plaintiffs in these actions
very differently, as the result would probably be to jeopard if
.not wholly destroy these securities.    The rights of these
plaintiffs as mortgage creditors, in the relief sought, should
not be confounded with those of the Troy and Boston Rail-
road Company.    Whatever rights that company may have,
can safely and appropriately be submitted to the protection
of the court in Vermont in which the action is pending, and
to which such company is a party.    It is further insisted that
the plaintiffs have an adequate remedy, by action, to recover
damages, and, therefore, an injunction should not be granted.
I do not think this proposition is sound as applied to the
facts of this case ; and the reasons for this conclusion have
been already stated in discussing the other questions involved
in this motion.

The case presented is peculiar in many of its features, and
may very appropriately, in my judgment, be denominated
special, within the decisions of the courts of this state, and
as such, fully justifies the continuance of the injunction with-
out violating any principle of law, comity, or policy.    The
following propositions are deducible :

The parties to the record in the action and attachment pro-
ceedings in Vermont, are citizens of the state of New York.

The plaintiffs herein are not parties to such action and

attachment proceedings, and cannot properly be heard therein.

The mortgages, which constitute the plaintiffs' only secu-rity, being unaccompanied by actual possession of the mort-gaged property by the mortgagees, are not, as against cred-itors, recognized as valid by the courts of Vermont, but are by the courts of the state of New York.

The defendants have voluntarily consented to the use of their names as parties to the action and proceedings in Ver-mont, and have received indemnity from Mr. Park, who is confessedly the prominent person in conducting such action and proceedings.

It is alleged, and not contradicted, that such action and proceedings were prompted by hostility to, and a desire to embarrass and injure the Troy and Boston Railroad Com-pany, which, if successful, by causing a sacrifice of the prop-erty in question, will seriously affect the plaintiffs, by im-pairing, if not wholly destroying their securities.

I am, therefore, of opinion that the injunction should be continued, and that no rule of comity or public policy will be violated thereby, nor can it be urged with propriety that any want of respect is exhibited for the courts of a sister state.

[RENSSELAER SPECIAL TERM, February 28, 1867. *Ingalls*, Justice.]