AARON R. STEVENS and Others, Respondents, *v.* THE CENTRAL NATIONAL BANK of Boston and Others, Appellants, Impleaded, etc.

*Power of a State court to enjoin parties from proceeding in a Federal court.*

In exceptional cases and where equity demands it, a State court of equity may enjoin parties to an action before it from taking any proceedings under a judgment in a Federal court.

When, in an action in the nature of a bill of review, the Supreme Court of the State of New York vacates as fraudulent the judgment and proceedings in a former action brought in that court to obtain the sale of railroad property under foreclosure, and directs a resale of the property, it may perpetually enjoin parties to the action of review from proceeding with a sale of the railroad property under a decree obtained by them in a Federal court, in an action begun in the Supreme Court of the State of New York, and removed into the Federal court because of the citizenship of parties, for the satisfaction of receiver's certificates held by them, issued in such former action and rendered void by the vacation of the judgment and proceedings therein, where such injunction raises no conflict with the Federal court.

APPEAL by the defendants, the Central National Bank of Boston, and others, holders of receiver's certificates, from an order made at the Saratoga Special Term, and entered in the office of the clerk of Rensselaer county on the 14th day of January, 1892, denying their motion to strike out the clause in the decision of the Special Term in this action directing judgment, perpetually enjoining them from proceeding with a sale under a decree obtained in the United States Circuit Court for the northern district of New York.

The action was brought by the plaintiff Stevens, a holder of bonds of the Lebanon Springs Railroad Company, in behalf of himself and others similarly situated, to procure the sale of the Lebanon Springs railroad, under judgments of foreclosure and sale procured by the defendant, the Union Trust Company, in December, 1872, as trustee for the holders of the Lebanon Springs Railroad Company's first mortgage bonds, and of certain other bonds. The complaint is also in the nature of a bill of review of a judgment obtained in an action somewhat similar to this brought by one Marvin Sackett against Russell C. Root and others in this court in 1880, the plaintiff in this action asking relief against that action and proceedings therein as fraudulent, and praying to foreclose all liens, real or

apparent, upon the railroad, and to establish the priority of the liens asserted by the plaintiff against all the liens allowed and created in the Sackett suit.

The judgment of sale, the execution of which was enjoined in the present action, was obtained in a suit brought by the Central National Bank of Boston, as the holder of receiver's certificates amounting to $250,000, on behalf of itself and other holders of receiver's certificates, in this court, against the defendants Foster and Hazard and others.   That action was duly removed into the Circuit Court of the United States, and a decree was made therein March, 1887, which directed a sale of the railroad property and premises and directed that Hazard and Foster should pay any deficiency that might arise on such sale, and that the plaintiffs in that suit and the other certificate holders should have execution therefor.

All persons who could claim under either the Sackett judgment or liens created since the foreclosure judgments are made parties defendant in this action.   Among the answers interposed, were those of the present appellants, holders of receiver's certificates created in the Sackett suit, alleging that the plaintiffs are bound by that suit, and by the decree in the United States Circuit Court.

The first trial of the action resulted in a dismissal of the complaint, but the General Term, on appeal, reversed the judgment and ordered a new trial, with an opinion reported 57 Hun, 499, in which the facts are fully stated.   The new trial resulted in a judgment for the plaintiffs, in accordance with the views expressed by the General Term and their judgment is affirmed at the present term.   (See opinion in " Cases Not Reported," Third Department, May Term, 1893, in this volume.)

*E. W. Paige,* for the appellants.

*Matthew Hale,* for the respondents.

HERRICK, J.:

This is an appeal from an order denying a motion to strike out the clause in the decision in the above-entitled action, directing judgment perpetually enjoining the sale, in the suits by the Central National Bank of Boston et al. against defendants Hazard, Foster et al., in the United States Circuit Court, and staying all their proceedings under the judgments rendered in said actions.

The learned justice before whom such motion was made has given his reasons for denying the same in an elaborate opinion, in which I concur. I can see no reason for writing another one.

The order appealed from should be affirmed, with costs and disbursements.

MAYHAM, P. J., concurred ; PUTNAM, J., not acting.

Order affirmed, with costs and disbursements.

The opinion of the justice before whom the motion was made is as follows :

PUTNAM, J.:

The facts on the second trial being substantially the same as on the first, in directing judgment herein, I based my conclusion on the holding of the General Term. If the question in the case had not already been passed upon by the appellate tribunal, I might have reached a different conclusion. But, of course, the opinion of the General Term on the same state of facts concluded me.

The effect of my decision, therefore, was to carry out the judgment of the General Term, and, hence, to determine, in reference to the " Sackett " suit that " such an action, thus instituted, controlled and resulting cannot be upheld. It was not a representative suit in fact ; if it was such in form and regularity then it is effectually impeached for fraud. The plaintiffs are   *   *   *   entitled to relief substantially the same as if the Sackett action had never existed. They were in no sense parties to that action, and, therefore, their rights remain untouched. It is said they are bound by the receiver's certificates which were declared to be a first lien upon the property. This cannot be so without a violation of constitutional protection. The court acquires jurisdiction of the parties, and of the subject-matter before it, but, from the nature of the case, can only acquire jurisdiction of so much of the subject-matter as all the parties before it hold.   *   *   *   Those who take receiver's certificates must be deemed to have taken them subject to the rights of parties who have prior liens upon the property and who have not, but should have been brought before the court.   *   *   *   The Central National Bank of Boston, a large holder of these certificates, as plaintiff, for itself, and all other certificate holders, brought an

action against Hazard and Foster, the purchasers of the railroad, upon the sale of the Sackett suit, and against the New York, Rutland and, Montreal Railway Company, to which company Hazard and Foster conveyed the road, and against the American Loan and Trust Company, trustees of mortgage bonds issued by said railroad company. Judgment was obtained against said defendants, establishing the bank's ownership of its certificates and their lien upon the railway, and providing for the sale of the railway to pay the plaintiff and such others as should come in and establish their ownership. Such a judgment is good against the defendants in that action. They derive title to the railroad under the Sackett sale which preferred the certificates. It is not binding upon the plaintiffs."

In pursuance of the decision of the appellate court I, therefore, found that the plaintiffs were entitled to a judgment providing that the Sackett judgment and all the proceedings in that action, including the sale and the deed by the referee to the defendants, Hazard and Foster, be reviewed and reversed, and all the property and franchises described in the complaint *together with all the interest therein of all the parties to this suit and all the Lebanon Springs and Harlem Extension bondholders be sold for the purposes above stated.* Also holding that the holders of the certificates issued (in the Sackett suit) by the receiver, Van Valkenburgh, are entitled to such proceeds of the sale as shall belong to those Lebanon Springs bonds which were in the trial and judgment in the Sackett suit represented.

In this discussion we must assume that my conclusions and findings, based as they are on the authority of the appellate court as to the Sackett suit, are correct, and that the Sackett judgment and sale thereunder was properly set aside.

Having reached the conclusion then that the Sackett suit was fraudulent and not a representative action, and that the sale thereunder should be vacated and set aside, and that the certificates issued in said action are, as to the plaintiffs, invalid and not enforcible, and that there must be a new sale of the property under the judgment in this action, it remains to be seen whether the defendant, the Central National Bank of Boston, should be allowed to proceed with the sale under the certificates issued in the Sackett suit under the judgment in the Circuit Court of the United States.

For what purpose? The sale under the judgment in that action could convey no title. It must be subject to and over-reached by the sale directed by the judgment herein. Yet, being made subsequent to said last-named judgment the effect would necessarily be to cast a cloud upon the title and to embarrass the subsequent sale to be made in this action.

The judgment in the United States court cannot be interfered with as far as it determines the rights of the Central National Bank to recover the proceeds of the bonds represented in the Sackett suit as against the defendants in the Federal action.

On the sale in this action the bank will receive the proceeds of the bonds represented in the Sackett suit which would go otherwise to the bondholders. On the sale so to be made it is to be presumed that the property will bring as high a price, if not higher, as on the sale under the United States judgment; and hence defendants will in fact receive the same proceeds as under the sale in the Federal action. Why, then, should the property be sold in that action, such sale being necessarily over-reached by the sale to be made herein and conveying no title?

What would be the effect of such a sale? The General Term holds that the certificates are void as to plaintiffs and all bondholders not represented in the Sackett suit. That the judgment in the Federal action is not binding on such bondholders. That plaintiffs are entitled to relief the same as if the Sackett suit had never existed — that is, a judgment of foreclosure and sale under which a title to the road can be given. What, then, would be the effect of a sale under the Federal judgment in favor of the bank? As stated such a sale would not give any title to the property. At the most it would convey to the purchasers the interest of the certificate holders who have acquired the interest of the bondholders represented in and assenting to the Sackett action and who are also represented in the Federal action. But what bondholders? As held by the General Term there must be an identification of those bondholders who held aloof from the Sackett suit, for such are not bound by any proceedings therein and are entitled to the benefit of this action. Therefore, if there is a sale under the Federal judgment its only effect will be to transfer to the purchasers the interest of the certificate holders representing the bondholders who

were represented in the Sackett action to the proceeds of the sale in this action.   But such interest is already preserved and taken care of by the judgment herein.   Under the judgment entered in this action under the direction of the appellate court, there can be no sale under the Federal judgment, that is, a sale that will transfer any title to the purchasers.

For the above and various other reasons not necessary to be stated, I think that the clause in the judgment restraining the sale under the Federal judgment should be retained.   If the bank has a claim against Hazard and Foster, the purchasers on the sale under the Sackett judgment, for any deficiency — after the judgment in this action setting aside the Sackett judgment and sale — I think they may recover such deficiency as well if the property is sold pursuant to the judgment herein, as if sold under the Federal judgment.

It is suggested, however, that the State court cannot enjoin parties from proceeding in the United States court in an action or under judgment therein.

There are statements in various authorities that would seem to sustain that position.

Thus, in 2 Story's Equity Jurisprudence, section 900, the author says, referring to the power of the Chancery Court to restrain parties within its jurisdiction from proceeding in foreign courts in certain cases : " There is one exception to this doctrine which has long been recognized in America, and that is, that the State courts cannot enjoin proceedings in the courts of the United States, nor the latter in the former courts."

Chancellor WALWORTH also, in *Mead* v. *Merritt* (2 Paige, 402), says : " Although this court has the physical power to act coercively on the parties within its jurisdiction to the same extent, it has frequently decided that it would not sustain an injunction bill to restrain a suit or proceeding previously commenced in a court of a sister State, or in any of the Federal courts.   The same principle has been adopted by the Supreme Court of the United States. (*Driggs* v. *Wolcott*, 4 Cranch, 179 ; *McKim* v. *Voorhies*, 7 id. 278.)

" And I am not aware that any court of equity in the Union has deliberately decided that it will exercise the power, by process of

injunction, of restraining proceedings which have been previously commenced in the courts of another State."

To the same effect is the case of *Rio Grande Railroad Company* v. *Gomila* (132 U. S. 483), the other case cited by defendant. (See *Schuyler* v. *Pelissier*, 3 Edw. Ch. 191; *Coster* v. *Griswold*, 4 id. 376.)

On the other hand, in *Dinsmore* v. *Neresheimer* (32 Hun, 206), the General Term of the first district enunciates this doctrine : " The principle has been regarded and stated as elementary in its character that a court of equity should interfere when sufficient equitable reasons are presented for doing so, to restrain the prosecution of an unconscionable action, although it may be pending in the courts of another State or country. (Story's Eq. Juris. § 899.)   This may be done without interfering with the proceedings themselves, by controlling the conduct of the parties when they are subject to the jurisdiction of the court so interposing for the prevention of injustice." In that action an injunction was granted to restrain the prosecution of an action in the Supreme Court of the District of Columbia, sufficient equitable grounds existing therefor.

In *Dehon* v. *Foster* (4 Allen, 550), the court remarked : " The authority of this court, as a court of chancery, upon a proper case being made, to restrain persons within its jurisdiction from prosecuting suits either in the courts of this State, or of other States, or foreign countries, is clear and indisputable.   In the exercise of this power, courts of equity proceed, not upon any claim of right to interfere with or control the course of proceedings in other tribunals, or to prevent them from adjudicating on the rights of parties when drawn in controversy, and duly presented for their determination. But the jurisdiction is founded on the clear authority vested in courts of equity over persons within the limits of their jurisdiction, and amenable to process, to restrain them from doing acts which will work wrong and injury to others, and are, therefore, contrary to equity and good conscience.   As the decree of the court in such cases is pointed solely at the party, and does not extend to the tribunal where the suit or proceeding is pending, it is wholly immaterial that the party is prosecuting his action in the courts of a foreign State or country."

This case was followed in *Vail* v. *Knapp* (49 Barb. 308, 309);

*Claflin & Co.* v. *Hamlin* (62 How. 284). In *Town of Thompson* v. *Norris* (11 Abb. N. C. 171, 172), Justice LEARNED intimates that there may be exceptional cases where an injunction would lie restraining the prosecution of an action in the United States courts.

See, also, *Burgess* v. *Smith* (2 Barb. Ch. 280), where Chancellor WALWORTH intimates that in a very special case the rule of comity forbidding the granting of an injunction to stay proceedings in a court of competent jurisdiction of a sister State might not be followed.

In *Barry* v. *Brune* (8 Hun, 395 ; 71 N. Y. 261), an action was commenced to collect an insurance policy and to restrain the enforcement of a judgment obtained by the defendant Brune in the Federal court as assignee of the policy of insurance ; plaintiff obtained a judgment for the amount of the policy and a perpetual injunction against the defendant restraining the enforcement of the United States judgment. This case would seem to determine that in a special case parties might be enjoined from proceeding in the courts of the United States.

In *People* v. *The Erie Railway Co.* (36 How. 132), the defendant was enjoined from delivering its property to a receiver appointed by a United States District Court. (See, also, *Bowers* v. *Durant*, 43 Hun, 348 ; *Kittle Case*, 8 Daly, 72 ; *Hayes* v. *Ward*, 4 Johns. Ch. 123.)

If the judgment of the Central National Bank on the certificates had been in the Supreme Court of the State — being so obtained on certificates issued in an action held to be fraudulent, and the judgment and proceedings in which are, so to speak, " wiped out " by the judgment in this action, it would be hardly claimed that a sale on the foreclosure of said certificates, which could convey no title and which would necessarily cast a cloud upon the title of the property under the sale in this action, should be allowed to proceed.

There are cases which hold that where the jurisdiction of the United States is derived from the citizenship of the parties, no higher sanctity or effect can be claimed for a judgment of a Circuit Court of the United States than is due to judgments of the State courts in a like case and under similar circumstances. (See *Dupasseur* v. *Rochereau*, 21 Wall. [U. S.] 135 ; *Crescent Live Stock Co.* v. *Butchers' Union*, 120 U. S. 147.)

If the doctrine as enunciated in these cases is correct then the court could as well enjoin the parties from proceeding to a sale on the judgment in the Federal court in favor of the Central National Bank as if that judgment had been rendered in the Supreme Court of this State. Especially in a case like this, where the action was commenced in the courts of this State, and only removed to the courts of the United States because of the citizenship of the parties.

With some hesitation I have reached the conclusion under the authority of the cases above cited that in some cases this court as a court of equity by its judgment may restrain parties from proceeding in the Federal courts, equity demanding such a judgment. It is true that ordinarily parties in an action in a State court will not be enjoined from proceeding in the action in the courts of the United States. This is the usual rule. It may be said to be _the rule._ But there are exceptions to the rule as held in the authorities hereinabove cited.

In 1 High on Injunctions, page 92 (note to sec. 111), the author, referring to the dicta 6 Wallace, 514, says : "While the doctrine as thus stated is undoubtedly true as regards any effort on the part of a State or Federal court to operate by injunction upon the process of any other tribunal, State or National, it should be borne in mind that courts of equity, in the exercise of their extraordinary powers by injunction, have never assumed to enjoin the court itself, but only to arrest the action of the parties litigant ; and this in the exercise of a jurisdiction strictly _in personam._"

Probably the State courts cannot enjoin proceedings in a Federal court, nor can a State court ordinarily enjoin parties from proceeding in a Federal action, but there are exceptional cases where the parties may be so restrained. The cases cited by defendant I think are not quite similar to this. In _Riggs_ v. _Johnson County_ (6 Wall. [U. S.] 166), an injunction was issued by a State court to stay proceedings on a judgment duly rendered in a United States court on the ground that the coupon bonds upon which the judgment was obtained were void under the holding of the State court, the Federal court having held them valid. In fact, by the action in which the injunction was issued the State attempted to reverse and set aside the holding of the United States court on questions of law involved in the case. And the court held : "That the injunction

of a State court is inoperative to control or in any manner to affect the process or proceedings of a Circuit Court."

It will be perceived that the action of the State court in that case was in direct conflict with the United States court. The cases of *The United States* v. *Keokuk* (6 Wall. 514); *The Mayor* v. *Lord*, (9 id. 409); *Supervisors* v. *Durant* (Id. 415), are similar to that of *Riggs* v. *Johnson County* (*supra*), and very clearly not like this case. In *Rio Grande R. R. Co.* v. *Gomila* (132 U. S. 478), the property of the debtor had been seized under execution on a judgment obtained of the Federal court, and it was held that the probate laws of the State would not *take the property from the hands of the marshal*. The court held that it would have been different had there not been any seizure under the United States judgment (pp. 484, 485). Of course, such a decision follows the doctrine that the proceedings in the courts of the United States cannot be interfered with by the State courts. The court then through its officers being in the actual possession of the property. The case of *Amy* v. *The Supervisors* (11 Wall. 136), is similar to that of *Riggs* v. *Johnson County* (*supra*). In *McKim* v. *Voorhies* (7 Cranch, 279), it is held that the State court has no jurisdiction to *enjoin a judgment* in the Circuit Court of the United States. In that case the State court attempted to enjoin all proceedings in a judgment of ejectment obtained in the Federal court, thus restraining proceedings on the judgment, not the party.

I think that no injunction should be granted by State courts restraining the enforcement by parties of a Federal judgment where the effect of such injunction is to raise a conflict with the Federal court. Neither, probably, can proceedings in the Federal courts be enjoined by a State court. But the authorities above cited seem to hold that in certain exceptional cases parties to an action in a State court may be enjoined from taking any proceedings under a judgment in a Federal court.

Although the doctrine enunciated in some cases cited by defendant, if taken literally, seems different, yet such doctrine in each of such cases was stated in reference to the facts of the case before the court, which, as we have seen, were very different from those in this case.

In this action the authority to issue the certificates, under which

the Central National Bank is proceeding in the Federal court, is an order made in the Supreme Court of this State in the Sackett suit. The same court in which the Sackett order was entered now vacates and sets aside, as it lawfully may, the Sackett judgment and sale, and all proceedings in that action, except as far as it determines the rights of the Central National Bank and Hazard and Foster and their grantees, as against parties represented in that action, to the proceeds of the bonds held by parties so represented.

The Supreme Court, therefore, on setting aside the proceedings in the action under which the Central National Bank received its certificates may properly restrain by injunction that bank from proceeding upon the judgment it obtained upon such certificates.

That bank is striving to enforce certificates issued by the Supreme Court of this State, which that court now adjudges void. It is proper for that court to prevent the bank from selling under a judgment upon the void certificates, which sale would give no title and tend to cast a cloud upon the title of the property to be derived under the sale herein. Such action of the State court is not at all in conflict with the holding of the Federal court. The judgment obtained in that court was in the action by the Central National Bank against Hazard and Foster, their grantees, and the American Loan and Trust Company, as subsequent mortgagees. Said judgment was based on the validity of the Sackett suit and judgment. The question as to whether that was a representative action or a fraudulent one was not involved. The only question in the Federal court was, were the certificates issued pursuant to the order of the State court in the Sackett suit, and was the plaintiff the owner of such certificates. No question raised in this action was involved in that. The judgment in this action raises no issue with the Federal court. That judgment was to enforce the certificates of this court, which this court now vacates with the proceedings and judgment in the action in which they were issued.

Hence, this case is one where, in the language of the counsel for the defendant, "*something has arisen since the rendition of the Federal judgment to render its enforcement inequitable.*" It is true that the judgment of the Federal court has not been reversed; but a judgment has been duly entered in the State court that avoids, as against the plaintiff and parties to this action, the certificates on

which the Federal judgment was based and renders a sale thereunder inequitable and ineffectual to convey any title.

In my opinion, the effect of the judgment for the resale of the property and the vacating the decree and sale thereunder in the Sackett suit renders an injunction of the sale under the certificates issued in the Sackett suit not only proper but necessary. If this court cannot award such an injunction it could not render the judgment given in this case. Such an injunction is a part of the relief the plaintiff is entitled to, if entitled to any judgment. To vacate the Sackett judgment and sale and proceedings on the ground that the action was not a representative one or was fraudulently conducted, and yet to allow, under certificates issued in that action, defendant to sell the property would not be reasonable or proper.

I think, therefore, that the motion should not be granted. I presume that no order is necessary to be entered. The matters discussed on this motion might properly have been discussed before the rendition of judgment, and hence no costs should be allowed.

As to the $2,000 allowance to the plaintiff, I thought, considering the amount involved and the necessary labor in the case, that such allowance was not excessive. But, of course, if desired the parties should be heard in the matter, and I am willing to hear any suggestion in that regard. Possibly other parties are entitled to some allowance.