HENRY I. CLARK, Individually and as a Member of the
   Copartnership Firm of Henry I. Clark & Co.;
   HERBERT H. CLARK, Individually, and as a Member
   of the Copartnership Firm of Henry I. Clark & Co.;
   HENRY L. CLARK, as a Member of the Copartnership
   Firm of Henry I. Clark & Co.; JOSIAH H. CLARK, as
   a Member of the Copartnership Firm of Henry I.
   Clark & Co.; ADA H. CLARK, Individually; ABRAHAM
   SARTORIUS, Individually, and as a Member of the
   Copartnership Firm of Sartorius & Einstein, and
   SAMUEL EINSTEIN, as a Member of the Copartner-
   ship Firm of Sartorius & Einstein, Suing in Their
   Own Behalf and in Behalf of all Other Preferred
   Stockholders of the Keokuk and Des Moines Rail-
   way Company, Similarly Situated, Plaintiffs, *v.*
   BANKERS TRUST COMPANY, as Trustee, and KEOKUK
   AND DES MOINES RAILWAY COMPANY, Defendants.

(Supreme Court, New York Special Term, March, 1917.)

Equity — when action in, maintainable — jurisdiction — constitutional
   law — corporations — parties — injunctions.

> Where a court of equity has jurisdiction of the person, an
> action to restrain the prosecution of an action brought by him
> in a federal court of another state is neither a violation of the
> comity existing between the several states nor in violation of
> the Constitution of the United States and the laws passed under
> it having reference to the full faith and credit to be given to
> judicial proceedings in another state.

> Where the necessary parties are before a court of equity
> it is immaterial that the *res* of the controversy is beyond the
> territorial jurisdiction of the court.

> An action in equity is maintainable by stockholders for the
> purpose of avoiding any improper transaction consummated
> at the expense of the corporation either by it or the lessee of
> its franchise and such right of action passes with a transfer of
> stock.

Where a corporation when insolvent or financially embarrassed transfers its property to a new company having the same shareholders, the transaction though binding between the parties cannot defeat the claim of a non-assenting creditor and as to it such a transfer is void in equity regardless of the motive with which it was made.

The plan for the reorganization of a corporation, which as lessee operated a railway system, made no provision for unsecured creditors except that all claims against it would be contested or otherwise dealt with as its receiver or the new company or the joint reorganization committee or other proper authority might determine. Prior to the appointment of said receiver the stockholders of the lessor brought an action in equity against its lessee claiming mismanagement of the leased property and violations of the lease. *Held,* that as by the prosecution of a creditors' bill in a federal court in another state by the trustee for bondholders, in connection with the reorganization proceedings, the causes of action and rights of the unsecured creditors of the lessee, particularly the causes of action of the plaintiffs as preferred stockholders of the lessor, would be wholly or in part defeated, the prosecution of the creditors' bill will be enjoined, plaintiffs having been refused intervention in such proceedings.

APPLICATION to continue an injunction.

James J. Franc (William N. Cohen, James J. Franc and Samuel H. Guggenheimer, of counsel) for plaintiffs.

Ingraham, Sheehan & Moran (George L. Ingraham, of counsel), for defendant Bankers Trust Company.

NEWBURGER, J.   The complaint herein alleges that the defendant the Keokuk and Des Moines Railway (referred to in the proceedings as the lessor) is a corporation organized under the laws of the state of Iowa, owning and operating a railroad of 162 miles between the city of Keokuk, Iowa, and Des Moines, in the same state, and having an office in this city. That the outstanding capital stock of said railway company

consists of 26,004 shares of common stock and 15,246 shares of eight per cent non-cumulative preferred stock. That the stocks have since 1878 been listed on the New York Stock Exchange. That the plaintiff Henry I. Clark is the owner of 3,604 shares of the preferred stock of the railway company. That the plaintiff Herbert H. Clark is the owner of 100 shares of the preferred stock. The plaintiff Ada H. Clark is the owner of 45 shares of the preferred stock. The plaintiffs, the copartnership firm of H. I. Clark & Co., are the owners of 70 shares of the preferred stock. The plaintiff Abraham Sartorius is the owner of 100 shares of the preferred stock, and the plaintiffs Sartorius & Einstein the owners of 300 shares of the preferred stock. That the Chicago, Rock Island and Pacific Railway Company (herein called the lessee), a corporation existing under the laws of Illinois and Iowa, having offices in Chicago, Illinois, is engaged in operating a railway system through various western states, and is a consolidation of the Chicago, Rock Island and Pacific Railroad Company and of various subsidiary railroad corporations. That by virtue of such consolidation the railway company assumed all of the liabilities, and succeeded to all of the franchises, leases and other rights of the Chicago, Rock Island and Pacific Railroad Company, including all the rights granted by the defendant Keokuk and Des Moines Railway Company under and by virtue of the lease. dated on or about the 14th day of May, 1878, which lease was executed and delivered in the city of New York. That on the first day of October, 1878, the lessee entered upon and took possession of the franchises, privileges, railroad rights and all other demised property of the lessor, and was also the owner of the majority in interest of all the outstanding stock of the lessor. That about June 2, 1880, the

Chicago, Rock Island and Pacific Railway Company, by virtue of the consolidation, assumed all the rights of the lessee in the property of the lessor, and has up to the present time exercised the entire and exclusive management of all the railroad of the lessor. That by reason of its control the lessee has elected all of the members of the board of directors of the lessor. That the plaintiffs on or about the 26th day of June, 1914, as preferred stockholders of the Keokuk road, in their own behalf and all other stockholders similarly situated, commenced an action in this court against the Chicago, Rock Island and Pacific Railway Company and the Keokuk and Des Moines Railway Company alleging among other things that said action could not be brought by the lessor against the lessee by reason of the lessee's control of the lessor, as it was impossible to obtain the consent of the board of directors of the lessor. That by the terms of the lease hereinbefore referred to the lessee covenanted to pay for the use of the railway for each year commencing October, 1878, and during the demised term up to December, 1923, a sum equal to twenty-five per centum of the gross earnings per year from the operation of the road of the lessor, and that in any event the lessee would pay as rental a minimum sum of $137,500 per year, being the amount of interest due annually upon the underlying mortgages of the lessor. That the lessee further agreed that it would render to the lessor on the first day of January in each year a statement for the year ending on the 30th day of September previous of the earnings of the leased property. The complaint further alleges a large number of violations and breaches of the lease hereinbefore referred to. That by reason of such violations the defendant Keokuk and Des Moines Railway Company has been, since the 26th day of June, 1914, and still is, an

unsecured creditor of the Chicago, Rock Island and
Pacific Railway Company of upwards of $5,000,000.
That after said action had been commenced in this
court the defendants, the lessee and lessor herein,
caused said action to be removed from this court into
the District Court of the United States for the South-
ern District of New York. That subsequently, upon
the application of the plaintiffs herein, who were also
the plaintiffs in that action, the United States District
Court for the Southern District of New York duly
remanded to this court said suit. That the lessee
herein served its separate answer in that action by
Messrs. White & Case, members of this bar, and the
lessor served a separate answer by Irving S. Olds,
who, it is claimed, was associated with the said firm of
White & Case. That on the 6th day of January,
1915, the parties to said action by stipulation referred
the issues to Lewis L. Delafield, Esq., as sole referee,
to hear and determine. That said stipulation also
provided that if the referee determined that an
accounting was necessary he was to proceed to take
and state the same. That the said referee proceeded
with the hearing, and the attorneys of the respective
parties entered into certain stipulations as to certain
facts, and about 375 pages of testimony were taken
and 116 exhibits were introduced in behalf of the
plaintiffs. That in the month of February, 1915, fur-
ther hearings before the referee were suspended
because of the refusal of Mr. Frank May, a witness
called on behalf of the plaintiffs, to return to the
jurisdiction. That said witness is the comptroller of
the lessee and is a resident of Chicago, state of Illi-
nois. That on the 20th day of April, 1915, an
action was instituted in the District Court of the
United States for the Northern District of Illinois,
Eastern Division, by the American Steel Foundries,

as complainant, against the Chicago, Rock Island and Pacific Railway Company, the lessee herein, as an unsecured creditor of the said railway for $15,818.46. That in said action the railway company admitting its insolvency, receivers of all the railroad, its assets, rights and franchises, were appointed. That thereafter the said receivers applied to the United States District Court for the Northern District of Illinois, Eastern Division, for authority to renounce the lease from the Keokuk road to the Chicago, Rock Island and Pacific Railway Company. That on such application the plaintiffs herein appeared by their solicitor and objected to the renunciation of said indenture of lease, and the matter was referred to a special master. That several hearings were held by the master, the last one in the fall of 1915, and said proceedings for renunciation are still pending and undetermined. That on or about the 5th day of January, 1917, Lewis L. Delafield, Esq., the referee heretofore referred to, fixed the further hearing of the reference for the 9th day of February, 1917, of which due notice was given to the respective attorneys. That on · the 20th day of April, 1915, certain holders of the capital stock of the Chicago, Rock Island and Pacific Railway Company formed a protective committee known as the "Amster committee," and certain other holders of the capital stock formed a protective committee known as the " Hayden committee." That in July, 1915, certain holders of the twenty-year five per cent gold debentures of the Chicago, Rock Island and Pacific Railway Company formed a protective committee known as the " debenture committee," and Mr. Seward Prosser, then and now the president of the defendant Bankers Trust Company, was made its chairman. That in May, 1916, an agreement for the reorganization of the Chicago, Rock Island and Pacific

Railway Company was entered into between the several committees heretofore referred to, and a '' joint reorganization committee '' was formed with Mr. Seward Prosser as chairman. That said joint reorganization committee published a plan and agreement for the reorganization of the said railroad and depositaries were named. That the firm of White & Case, who were counsel for the railroad in the first suit, were also counsel for a time of the receivers, counsel for the defendant Bankers Trust Company, the debenture committee and the joint reorganization committee. That said firm of lawyers selected the American Steel Foundries as complainant in the receivership cause in the United States court, aided in the preparation of the bill of complaint in said action, and selected the solicitors for the complainant in said cause. That on the 17th day of January, 1912, the defendant Bankers Trust Company was selected as trustee for the benefit of the holders of the five per cent gold debentures hereinbefore referred to. That default has been made upon the interest due upon said debentures, and that the holders of more than one-fourth in amount of said debentures have made request for the trustee to declare the principal of said debentures due and payable, which said trustee did. That several members of the different reorganization committees have become members of the board of directors of the Chicago, Rock Island and Pacific Railway Company. That the defendant Bankers Trust Company, as trustee as aforesaid, contrary to equity, good conscience and fair dealings, confederated and conspired with a majority of the board of directors of said railway company and the several reorganization committees for the purpose of hindering, delaying, impeding, ruining and embarrassing, and wholly or in part defeating the causes of action and rights of the unsecured cred-

itors of the Chicago, Rock Island and Pacific Railway
Company, particularly the causes of action of the
plaintiffs as preferred stockholders of the Keokuk
road. That in pursuance to said general conspiracy
the several parties heretofore referred to have insti-
tuted certain proceedings in the said District Court
of the United States by the defendant Bankers Trust
Company, as trustee, filing its petition for leave, as
trustee, to prosecute an action at law in said court for
the principal and interest of the $20,000,000 five per
cent gold debentures of said railway company, and
that on the 23d day of January, 1917, judg-
ment was recovered by the said Bankers Trust Com-
pany for the amount of the principal and interest, and
that execution was issued on said judgment to the mar-
shal of the district, who, on the 30th day of Jan-
uary, 1917, returned the same with the indorsement
"no property found and no part satisfied." That on
or about the 3d day of February, 1917, the defend-
ant Bankers Trust Company, as trustee, filed a peti-
tion for leave to institute a bill in equity against the
railway company, and a copy of said petition was
served by mail on Henry I. Clark, one of the plaintiffs
herein, and on James J. Franc, the attorney for the
plaintiffs herein, although no notice had been served
upon either of the filing of the petition upon which
the judgment at law was obtained. That the plan
and agreement for the reorganization of the said rail-
way company makes adequate provision for the stock-
holders and the holders of the gold debentures of said
railway company, but makes inadequate, insufficient
and inequitable provision for the unsecured creditors
of said railway company, and makes no provision
whatsoever in favor of the defendant Keokuk and Des
Moines Railway Company or the plaintiffs herein as
its preferred stockholders. That the object of the

proposed creditors' bill was to require all the unsecured creditors and the plaintiffs herein to litigate their claims before the special master in the proceedings instituted in the United States court. That the plaintiffs have expended in the suit instituted by them in 1914 large sums of money for attorneys, railway engineers, stenographers and other disbursements which will be lost unless they be permitted to proceed with their 1914 suit, and that they have no adequate remedy at law. The prayer of the complainant seeks to enjoin the defendants from proceeding with the proceedings instituted in the United States court by the Bankers Trust Company, or from doing anything whereby the unsecured creditors of the railway company, particularly the Keokuk and Des Moines Railway Company, and the plaintiffs herein, may be defeated in the enforcement of their claims and causes of action. Attached to the moving papers are the pleadings in the 1914 action instituted by the plaintiffs and the proceedings thereunder had. The answering affidavits of the defendant Bankers Trust Company deny that there was anything in the plan of reorganization that was intended to destroy or does destroy or impair any valid or enforcible claim against the Chicago, Rock Island and Pacific Railway Company, and deny that the object and purpose of the bill of the Bankers Trust Company is intended to circumvent or defeat the claim of the Keokuk and Des Moines Railway or the plaintiffs, and that the claim of the plaintiffs or the Keokuk railway is in dispute and is now subject to investigation by this court in the suit now pending. The defendants also deny any conspiracy and allege that all of the proceedings in behalf of the Bankers Trust Company have been instituted in good faith and simply in discharge of its duties as trustee and under advice of counsel as to the proper

method of enforcing the rights of the debenture holder. That the plan of reorganization reserves the power to issue preferred stock to an amount not exceeding $15,-000,000 for unsecured creditors. There is an affidavit of the managing clerk of White & Case setting forth the proceedings taken in the 1914 suit of the plaintiffs. The answer of the Bankers Trust Company denies any conspiracy or that any proceeding taken in connection with the reorganization of the Rock Island road and in the undertaking of any suit or proceeding in the United States court was for the purpose of injuring plaintiffs or the defendant Keokuk railway. That the District Court of the United States for the Northern District of Illinois, Eastern Division, had before the commencement of this action taken jurisdiction of the affairs of the Chicago, Rock Island and Pacific Railway Company, of the disposition of its property and all claims against it, and therefore this court had no jurisdiction to interfere with or enjoin the proceeding in said United States District Court. Attached to the answer are several exhibits, among them one marked Exhibit B, being the order of the United States District Court judge refusing leave to the plaintiffs to file on behalf of the Keokuk and Des Moines Railway Company their petition to intervene in the receivership proceeding. A preliminary injunction was granted herein, and I am now asked to continue same during the pendency of this action. It has been repeatedly held that a court of equity having jurisdiction of the person may restrain such person from prosecuting a suit in another state, and that such action was not a violation of the comity existing between the several states and not in violation of the Constitution of the United States and the laws passed under it having reference to the full faith and credit to be given to the judicial proceedings in another state, and that where the neces-

sary parties are before a court of equity it is immaterial that the *res* of the controversy is beyond the territorial jurisdiction of the court. Without regard to the situation of the subject matter such courts consider the equities between the parties and decree *in personam* according to those equities and enforce obedience to their decrees by process *in personam*. *Phelps* v. *McDonald,* 99 U. S. 308; *Cole* v. *Cunningham,* 133 id. 107; *Vail* v. *Knapp,* 49 Barb. 305; *Dinsmore* v. *Neresheimer,* 32 Hun, 204; *Webster* v. *Columbian National Life Ins. Co.,* 131 App. Div. 837; affd., 196 N. Y. 523; *Gibson* v. *American Loan & Trust Co.,* 58 Hun, 443. This court has the power to prevent those who are amenable to its own processes from instituting or carrying on suits in other states which will result in injury or fraud. It is not disputed that the plaintiffs in 1914 instituted their action and that the same was at issue months before the Rock Island receivership and long before there was any default in the payment of the principal and interest on the debenture bonds of the Chicago, Rock Island and Pacific Railway Company. That the plaintiffs Sartorius and Einstein are and have been for many years citizens of this state, and they with the other plaintiffs have been for years preferred stockholders of the Keokuk and Des Moines Railway Company. The effect of the institution of the creditors' bill filed by the defendant Bankers Trust Company in the United States court unquestionably would nullify any proceeding heretofore taken by the plaintiffs. Plaintiffs had a perfect right, as stockholders of the Keokuk Company, to bring an action for the purpose of avoiding any improper transaction consummated at the expense of the corporation, either by the Keokuk corporation or the lessee of its franchise and railway system, the Rock Island corporation. As was said by Mr. Justice Hiscock in *Pollitz* v. *Gould,*

202 N. Y. 15: "A stockholder has an indivisible interest in the property and assets of a corporation subject to the discharge of its obligations. This indivisible interest generally speaking is represented by certificates of stock and is transferred by their transfer. The general character of these certificates and the effect of their transfer in passing the interest of the holder is too well established and understood to require any discussion. As an original proposition it would seem to be clear that a right of action by or in behalf of the corporation for fraud to set aside a conveyance of its assets or to avoid obligations imposed upon it is part of its rights, property and assets in which a stockholder has this indivisible interest transferable by the transfer of his certificates." See *Continental Sec. Co.* v. *Belmont,* 206 N. Y. 7. The creditor's bill in the United States court would injure plaintiffs in their action as stockholders of the Keokuk railway to recover such damages as they might show occurred through the action of the directors of the Rock Island road, and for which they brought the action in 1914. It is apparent that the refusal of the United States court to permit the plaintiffs to intervene in the creditor's suit by the Bankers Trust Company prevented plaintiffs from proving the cause of action which they claim arose by reason of the Rock Island Railway Company's failure to carry out the terms of the lease between said railway and the Keokuk Company. In *Northern Pacific Ry.* v. *Boyd,* 228 U. S. 482, it was held, at page 502: " 4. Corporations, insolvent or financially embarrassed, often find it necessary to scale their debts and readjust stock issues, with an agreement to conduct the same business with the same property under a reorganization. This may be done in pursuance of a private contract between the bondholders and stockholders; and

though the corporate property is thereby transferred to a new company, having the same shareholders, the transaction would be binding between the parties. But, of course, such a transfer by stockholders from themselves to themselves cannot defeat the claim of a non-assenting creditor. As against him the sale is void in equity, regardless of the motive with which it was made; for if such contract reorganization was consummated in good faith and in ignorance of the existence of the creditor, yet when he appeared and established his debt the subordinate interest of the old stockholders would still be subject to his claim in the hands of the reorganized company (cf. *San Francisco & N. P. R. R.* v. *Bee,* 48 Cal. 398; *Grenell* v. *Detroit Gas Co.,* 112 Mich. 70). There is no difference in principle if the contract of reorganization, instead of being effectuated by private sale, is consummated by a master's deed under a consent decree." And at pages 504–505: " For, if purposely or unintentionally a single creditor was not paid or provided for in the reorganization, he could assert his superior rights against the subordinate interests of the old stockholders in the property transferred to the new company. They were in the position of insolvent debtors, who could not reserve an interest as against creditors. Their original contribution to the capital stock was subject to the payment of debts. The property was a trust fund charged primarily with the payment of corporate liabilities. Any device, whether by private contract or judicial sale under consent decree, whereby stockholders were preferred before the creditor was invalid. Being bound for the debts, the purchase of their property, by their new company, for their benefit, put the stockholders in the position of a mortgagor buying at his own sale. If they did so in good faith and in ignorance of Boyd's claim, they were none the

less bound to recognize his superior right in the property, when years later his contingent claim was liquidated and established. That such a sale would be void, even in the absence of fraud in the decree, appears from the reasoning in *Louisville Trust Co.* v. *Louisville Ry.,* 174 U. S. 674, 683, 684, where ' assuming that foreclosure proceedings may be carried on to some extent at least in the interests and for the benefit of both mortgagee and mortgagor (that is, bondholder and stockholder),' the court said that ' no such proceedings can be rightfully carried to consummation which recognize and preserve any interest in the stockholders without also recognizing and preserving the interests, not merely of the mortgagee, but of every creditor of the corporation.   *   *   *   Any arrangement of the parties by which subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation.' '' See *Kansas City Ry.* v. *Guardian Trust Co.,* 240 U. S. 166. The plan of reorganization proposed by the several committees of the Chicago, Rock Island and Pacific Railway Company, as appears from the printed form marked Exhibit I of the plaintiffs' complaint, after referring to the scope and effect of the reorganization, at page 15 says: '' Certain of the more important claims existing or asserted against the railway company and — or its receiver, or hereafter to become due, are below enumerated. *The list does not include* amounts claimed for damages for personal injuries, or freight claims, or *amounts claimed for damages in litigations.* The joint reorganization committee has endeavored to procure full and correct figures, but it assumes no responsibility whatsoever for the completeness or correctness of the information given below; nor is the fact that any claim is below

listed (or is referred to as a liability) to be deemed in any sense an admission of the validity thereof, but every such claim will be contested, compromised, settled, paid or otherwise dealt with as the receiver or the new company, or the joint reorganization committee, or other proper authority, may determine.'' It will thus be seen that no provision has been made for unsecured creditors except that all claims will be contested or otherwise dealt with as the receiver or the new company or the joint reorganization committee or other proper authority may determine. In other words, plaintiffs, having come into a court of equity having jurisdiction of the persons of the parties against whom they have charged improper acts on the part of the trustees in the management of the railway company, are to be deprived of their day in court and submit their claims to a body of men in the selection of whom they have had no voice. To enforce such an agreement as against the plaintiffs would be inequitable and oppressive. See opinion of Circuit Judge Hook in *Guaranty Trust Co.* v. *Missouri Pacific Ry.*, 239 Fed. Repr. filed November 27, 1916. For the reasons stated the application to continue the temporary injunction *pendente lite* is granted.

Motion granted.